IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| LOFISA S., individually and on behalf of her minor child, S.S., | ) ) ) ) | CIVIL NO. 12-00213 SOM/BMK |
| Plaintiff-Appellant, | ) ) ) | ORDER AFFIRMING ADMINISTRATIVE HEARING OFFICER'S DECISION |
| vs. | ) ) ) | |
| STATE OF HAWAII, DEPARTMENT OF EDUCATION, et al., | ) ) ) ) | |
| Defendants-Appellees. | ) ) ) | |
| L.A.S., individually and on behalf of her minor child, S.A.S., | ) ) ) | CIVIL NO. 14-00071 SOM/BMK |
| Plaintiff-Appellant, | ) ) ) | |
| vs. | ) ) ) | |
| STATE OF HAWAII, DEPARTMENT OF EDUCATION, et al., | ) ) ) ) | |
| Defendants-Appellees. | ) ) ) | |

**ORDER AFFIRMING ADMINISTRATIVE HEARING OFFICER'S DECISION**

I.        INTRODUCTION.

        Plaintiff Lofisa S., the mother of S.S., seeks reversal
of the Findings of Fact, Conclusions of Law, and Decision After
Remand (the "Decision") issued by an Administrative Hearing
Officer ("AHO") on January 9, 2014, concluding that the
Department of Education ("DOE") had not conditioned an offer of a

free appropriate public education ("FAPE") on S.S.'s attendance
at a public school, and, even assuming the DOE did impose such a
condition, the DOE did not violate the Individuals with
Disabilities Education Improvement Act of 2004 ("IDEA").  The
court affirms the Decision.

II.      **FACTUAL BACKGROUND.**

S.S. is a minor who was found eligible to receive
special education and related services under the IDEA.  ECF No.
12-18, PageID # 159.[1]  In the Hawaii public school system, run by
the DOE, S.S.'s home school is Kailua Intermediate School.  Id.,
PageID # 156.  During the 2009-10 school year, S.S. attended a
private school in Hawaii.  Id., PageID # 159.  The DOE, pursuant
to a settlement agreement, paid for S.S.'s tuition at that
private school for the 2009-10 school year, which ended on May
27, 2010.  Id.

On May 6, 2010, the DOE held a meeting at Kailua
Intermediate School to prepare an Individualized Education Plan
("IEP") for S.S. for the 2010-11 school year.  Id.  According to
the DOE, although it offered S.S. a FAPE at Kailua Intermediate
School for the 2010-11 school year, Plaintiff, who participated
in the IEP meeting via telephone, requested that S.S. remain at
the private school.  ECF No. 23, PageID # 481.  The DOE says it

_____

[1] In these consolidated cases, all ECF citations are to the
record in Civil No. 12-00213 unless otherwise noted.

refused this request because S.S.'s needs could be met at her home school in the least restrictive environment. ECF No. 14-7, PageID # 264.

Although the DOE did not hear from Plaintiff or S.S. during the 2010-11 school year, the DOE prepared for S.S.'s arrival at Kailua Intermediate School by creating an individualized schedule for her. When S.S. did not show up for school, her special education teacher phoned her home at least twice, but received no response. ECF No. 15-1, PageID # 428-29.

In addition, the DOE sent Plaintiff two letters during the 2010-11 school year, inviting her to contact the principal at Kailua Intermediate School if she wanted S.S. to receive special education services. ECF No. 12-18, PageID #s 160, 163.

The first letter, dated March 3, 2011, had a check mark next to a box for "Free Appropriate Public Education (FAPE)" and stated, "If you wish to have your child receive [a FAPE] in a public school, contact the principal at the phone number listed above." ECF No. 13-3, PageID # 196. The letter further stated that if Plaintiff did not contact the school by March 31, 2011, "a reevaluation will not be conducted" and "your child will no longer be eligible for special education services[.]" Id. A box for "Private School Participation Project (PSPP)" was not checked off on the letter.

Asked what she did when she received the first letter,

Plaintiff said, "I read it. And from my understanding by reading it, basically it's telling me that in order to have these services, I have to have my child in a public school, without having an IEP. . . . Basically, my understanding is what it's telling me is that I -- she is placed currently at [the private school], and I would have to take her out of [the private school], place her in a public school, without even having an IEP, to give her the current services that she needs." ECF No. 15-1, PageID #s 347-48.

The second letter, dated April 1, 2011, said: "Our records indicate that your child has been identified by the DOE as having a disability, but is enrolled in a private school. Your child may be eligible for services under the PSPP [Private School Participation Project][.]" ECF No. 13-3, PageID # 197. The letter also stated: "If we do not hear from you by April 21, 2011, a reevaluation will not be conducted" and "your child will no longer be eligible for special education services." Id.

Plaintiff did not respond to either letter. ECF No. 15-1, PageID #s 351-52. Plaintiff explained that she was uncommunicative because she "got caught up with [her] busy life" and "didn't get to it right away as much as [she] needed to." Id.

S.S. did not attend Kailua Intermediate School during the 2010-11 school year. She instead continued on at her private

school.  Id., PageID #s 348-49.  During that time, Plaintiff did
not file any notice for an impartial hearing.

On August 26, 2011, Plaintiff requested a due process
hearing on the issue of S.S.'s education.  ECF No. 12-2, PageID
#s 64-68.  In her complaint, Plaintiff asserted that: (1) S.S.
"enjoys the protections of the 'stay put' provision of the IDEA";
(2) S.S. and/or her parents were "denied their federal rights
when the DOE offered to provide [S.S.] a free appropriate public
education on the condition that she agrees to receive it in a
public school"; and (3) "in the alternative, if the DOE held an
IEP meeting without parents, this violated their rights."  Id.,
PageID # 66.

The AHO concluded that S.S. had been denied a FAPE for
the 2011-12 school year because her "current IEP expired on May
6, 2011, at the end of the 2010-2011 school year[,] and prior to
the 2011-2012 school year[,] [S.S.] received no further offers of
FAPE."  ECF No. 12-18, PageID # 167.  The AHO nevertheless denied
Plaintiff's request for reimbursement of private school tuition
for the 2011-12 school year because "Petitioners did not file
their request for a due process hearing within 180 days of
Parents' unilateral special education placement of Student as
required by HRS § 302A-443."  Id., PageID #s 168-69.

Plaintiff appealed the AHO's decision to this court on
April 20, 2012.  ECF No. 1.  On February 13, 2013, this court

reversed the AHO's decision that the reimbursement request had
been untimely but ruled that the reversal did not by itself
entitle Plaintiff to relief because the AHO's ruling that the DOE
had denied a FAPE by failing to have an IEP in place before the
start of the 2011-12 school year concerned a matter not raised in
the administrative complaint.  The court vacated as unauthorized
the AHO's ruling as to the denial of FAPE in the form of a
failure to have an IEP in place.  The court then remanded the
case to the AHO for consideration of the actual issues raised in
the administrative complaint.  Specifically, the AHO was to
determine whether "(1) the DOE conditioned its making of an offer
of FAPE on S.S.'s attendance at a public school, and (2) if the
DOE did impose such a condition, whether the DOE thereby violated
the IDEA."  ECF No. 27, PageID # 522.

On remand, a different AHO determined that Plaintiff
had failed to show by a preponderance of the evidence that the
DOE had conditioned its making of an offer of FAPE on S.S.'s
attendance at a public school.  Civ. No. 14-cv-71, ECF No. 8-1,
PageID # 70.  The AHO explained:

> [T]he relevant evidence shows that the DOE's
> March 3, 2011 letter could be interpreted by
> an outside observer as evidence that the DOE
> had already decided upon a public school
> setting for Student, but, based on the DOE's
> past practices concerning Student and
> Findings of Fact 15 through 17 set forth
> above, the letter was not an accurate
> reflection of the DOE's actual intent. The
> Petitioners have failed to demonstrate by a

preponderance of the evidence that the DOE
had made any predetermination in Student's
case or that the DOE was, in actuality,
conditioning an offer of FAPE on Student's
attendance at a public school.

Id., PageID # 66-67. The AHO also concluded that, even assuming

the DOE did impose such a condition, Plaintiff did not show that

the DOE thereby violated the IDEA. Id.

Plaintiff appealed the AHO's Decision to this court on

February 7, 2014. Civ. No. 14-cv-71, ECF No. 1. In the

Complaint filed with this court, Plaintiff alleges that S.S. was

denied a FAPE and the AHO "did not include all relevant evidence,

. . . was biased and did not factually or legally present the

issue or evidence in a true or legitimate manner." Id., PageID

# 4.

In her opening brief, Plaintiff contends that this

court "continues to lack subject matter jurisdiction on the issue

of a denial of FAPE." ECF No. 23, PageID # 235. Plaintiff also

contends that the AHO erred in concluding that the DOE did not

condition its making of an offer of FAPE on S.S.'s attendance at

a public school because the plain meaning of the letter of March

3, 2011, and Plaintiff's testimony regarding her understanding of

the letter's meaning demonstrate that such a condition was

imposed. Id., PageID # 243. According to Plaintiff, the DOE's

conditioning of the offer of FAPE violated the IDEA, and the AHO

erred in his determination of this issue by relying on irrelevant

facts.  Id., PageID # 244.  Plaintiff also notes that the AHO was "recently hired," "was not in attendance at the [earlier] hearing," "rendered no new factual findings in support of his legal analysis," and made determinations that were not "careful or logical[.]"  Id., PageID #s 243, 244.

## III.    STATUTORY FRAMEWORK.

"The IDEA is a comprehensive educational scheme, conferring on disabled students a substantive right to public education."  Hoeft v. Tuscon Unified Sch. Dist., 967 F.2d 1298, 1300 (9th Cir. 1992).  The IDEA ensures that "all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs and prepare them for further education, employment, and independent living."  20 U.S.C. § 1400(d)(1)(A).

To provide a FAPE in compliance with the IDEA, the DOE must evaluate a student, determine whether that student is eligible for special education and related services, conduct and implement an IEP, and determine an appropriate educational placement for the student.  See 20 U.S.C. § 1414.

"A school district violates the IDEA if it predetermines placement for a student before the IEP is developed or steers the IEP to the predetermined placement."  K.D. ex rel. C.L. v. Dep't of Educ., Hawaii, 665 F.3d 1110, 1123 (9th Cir.

2011).  "Predetermination violates the IDEA because the [IDEA] requires that the placement be based on the IEP, and not vice versa."  Id.

IV.     **STANDARD.**

The IDEA provides that "[a]ny party aggrieved by the findings and decision" of the AHO "shall have the right to bring a civil action with respect to the complaint presented pursuant to this section, which action may be brought in any State court of competent jurisdiction or in a district court of the United States, without regard to the amount in controversy."  20 U.S.C. § 1415(i)(2)(A).

When reviewing an appeal from an AHO, the court: "(i) shall receive the records of the administrative proceedings; (ii) shall hear additional evidence at the request of a party; and (iii) basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate."  20 U.S.C. § 1415(i)(2)(c).  The burden of proof is on the party challenging the administrative ruling.  Schaffer ex rel. Schaffer v. Weast, 546 U.S. 49, 62 (2005).

The court reviews the AHO's conclusions de novo. Ashland Sch. Dist. v. Parents of Student E.H., 587 F.3d 1175, 1182 (9th Cir. 2009).  De novo review under the IDEA "carries with it the implied requirement that due weight shall be given to the[] [administrative] proceedings."  Id. (quoting Bd. of Educ.

9

v. Rowley, 458 U.S. 176, 206 (1982)). A district court "must give deference to the state hearing officer's findings," and "avoid substituting its own notions of sound educational policy for those of the school authorities which it reviews." Id. (internal quotation marks and brackets omitted).

V.     ANALYSIS.

   A.   Plaintiff's Comments Regarding This Court's Prior
        Decision Are Not Well Taken.

        For a considerable portion of the opening brief, Plaintiff expresses disagreement with this court's decision to remand the case to the AHO. Now is not the appropriate time to air these concerns. This court presently has before it an appeal from the second administrative decision, not the first, and the issues involved in the prior appeal are not being revisited at this time. Plaintiff can certainly appeal both the court's earlier remand order as well as the present order to the Ninth Circuit, but the proceeding now before this court concerns the appeal from the AHO's decision on remand, not this court's remand order.

        Even assuming the court considered Plaintiff's argument regarding the prior appeal, Plaintiff fails to demonstrate any error. Plaintiff argues that this court "continues to lack subject matter jurisdiction on the issue of a denial of FAPE" because of an allegedly improper "expansion of subject matter jurisdiction" during the prior appeal. ECF No. 23, PageID # 235.

No issue of subject matter jurisdiction is before this court.  An alleged IDEA violation presents a federal question that gives rise to subject matter jurisdiction.  If there are "jurisdictional" issues, they are statutory or administrative, not constitutional, and therefore in no way implicate subject matter jurisdiction.

Leaving aside the characterization of the issue Plaintiff raises, Plaintiff fails to demonstrate that this court's earlier remand was improper.  Although Plaintiff contends that this court was bound by the AHO's determination that the DOE failed to offer S.S. a FAPE, Plaintiff cites no law preventing this court from sua sponte raising the issue of whether the AHO issued a ruling going to a matter outside the four corners of the administrative complaint.  Notably, on February 8, 2012, the court notified the parties that it was inclined to rule that the AHO had acted outside the scope of the issues raised by S.S.  The court held a hearing on February 11, 2012, at which the court's inclination was discussed.  It was only after that hearing that the court issued its order remanding the case to the AHO for consideration of the "condition" issue.

Plaintiff cites no authority for the proposition that this court is bound by an illegal determination solely because that determination was not appealed.  Plaintiff's counsel explained at the most recent hearing before this court that,

because his clients do not pay him, he deliberately skimps on presentations to the trial court, choosing to invest time only in filings with the Ninth Circuit. He appears to believe that he need only raise an issue in the district court, without citation to supporting law. This is a disservice to the district court and the adversarial system. This court must make its way toward a decision without assistance from the very party bearing the burden of persuasion, and without a clue as to what authorities or analysis that party might rely on in a later challenge to this court's ruling. Certainly this places a burden on this court, and this is far from the most persuasive manner of presenting a party's position. In the present case, Plaintiff does not, with a mere assertion, persuade this court that the earlier remand raised a "jurisdictional" problem.

### B. The DOE Did Not Condition Its Making of An Offer of FAPE on S.S.'s Attendance At A Public School.

Plaintiff contends that the DOE, through its letter of March 3, 2011, conditioned its offer of FAPE on S.S.'s attendance at a public school. According to Plaintiff, this constitutes a predetermination by the DOE as to S.S.'s placement, in violation of the IDEA. ECF No. 8-1, PageID # 61.

Predetermination occurs when an educational agency determines a student's placement prior to an IEP and is unwilling to consider any other placement. K.D. ex rel. C.L., 665 F.3d at 1123; S.P. ex rel. Penalosa v. Scottsdale Unified Sch. Dist. No.

48, No. 2:12-CV-01193 JWS, 2013 WL 5655527, at *4 (D. Ariz. Oct. 17, 2013).

Plaintiff argues that the following language in the DOE's letter of March 3, 2011, demonstrates that S.S.'s placement was predetermined: "If you wish to have your child receive [a FAPE] in a public school, contact the principal at the phone number listed above." ECF No. 13-3, PageID # 196. At the original administrative hearing, Plaintiff stated that her understanding of the letter was that "in order [for S.S.] to have these services, I have to have my child in a public school, without having an IEP." ECF No. 15-1, PageID #s 347-48.

As the AHO indicated, the language used in that letter might be read as suggesting that the DOE had already decided that a public school placement was appropriate for S.S. However, the weight of the evidence clearly indicates that such a predetermination had not occurred.

A district educational specialist ("DES") from the DOE testified as to the process used by the DOE in sending out FAPE and PSPP letters. ECF No. 15-1, PageID #s 391-92. According to the DES, S.S.'s FAPE letter was sent out because S.S.'s annual IEP was set to expire within a few months. Id., PageID # 392. The DES stated that, if a parent responds to a FAPE letter like the one Plaintiff received, the school would "gather . . . information from [the] parent[s] and private school[,] . . . hold

an IEP meeting and use the data provided by them to develop an appropriate present level[] of educational performance, go through the goals and objectives, and make an offer of FAPE[.]" ECF No. 13-1, PageID #s 393-94. The DES emphasized that the "full range of placement options" would be open to a student during this process, including, but not limited to, public school and private school placements. Id., PageID # 394.

This information supports the DOE's argument that it had not predetermined S.S.'s placement. Although the letter of March 3, 2011, might have seemed to Plaintiff to be suggesting that the DOE intended to place S.S. in a public school, there is no evidence to show that this was the DOE's actual intent or that the DOE was unwilling to consider any alternative. As the DES indicated, the DOE's procedure when it received a response to a FAPE letter was to conduct an IEP, during which a student's placement options would be considered. Had Plaintiff responded to the DOE's correspondence, as she was invited to do, the DOE would have proceeded with an IEP for S.S., and Plaintiff would have been free to express her opinion as to the best placement for S.S. There is no evidence to suggest that such expressions would have fallen on deaf ears, or that the DOE would have automatically placed S.S. in a public school no matter what.

Plaintiff appears to believe that this court may not consider the DOE's practice or intent in determining whether the

DOE had predetermined S.S.'s placement, and that the only relevant factor other than the March 3 letter itself is Plaintiff's subjective interpretation of the letter. ECF No. 23, PageID # 23. Plaintiff is mistaken. The relevant case law makes clear that predetermination turns on the educational agency's motivation and intent, not a parent's perception of such. See, e.g., K.D. ex rel. C.L. v. Dep't of Educ., Hawaii, 665 F.3d 1110, 1123 (9th Cir. 2011) (considering the DOE's actions and intent in determining issue of predetermination); Fort Osage R-1 Sch. Dist. v. Sims ex rel. B.S., 641 F.3d 996, 1005 (8th Cir. 2011) (considering school district's intent in determining issue of predetermination); Deal v. Hamilton Cnty. Bd. of Educ., 392 F.3d 840, 858 (6th Cir. 2004) (considering school system's policy and practice in determining issue of predetermination); S.P. ex rel. Penalosa, 2013 WL 5655527, at *4 ("[T]he required inquiry in a predetermination case should focus on the school district's motivation and intent."); Virginia S. ex rel. Rachael M. v. Dep't of Educ., Hawaii, Civ. No. 06-00128 JMS/LEK, 2007 WL 80814, at *11 (D. Haw. Jan. 8, 2007) ("When asked if she believed that this determination was made before the IEP meeting even started, Mother replied, 'Probably. I would be inclined to say yes.' This subjective belief does not amount to predetermination of placement." (citation omitted)).

Nothing in Plaintiff's papers indicates that the DOE

intended to place S.S. in a public school regardless of any alternatives and no matter what occurred at an IEP meeting. Notably, Plaintiff does not cite a single case on predetermination in her opening brief. All Plaintiff relies on is the DOE's mention of a public school in its letter dated March 3, 2011, and Plaintiff's own interpretation of this letter.

Because Plaintiff never responded to the DOE's letters, never requested an IEP, and never asked the DOE to consider an alternative placement, it is difficult for this court to conclude, as Plaintiff desires, that the DOE had decided S.S.'s placement as of March 3, 2011. The court is certainly not suggesting that a parent is responsible for ensuring that school authorities offer a student a FAPE. Instead, this court is suggesting that Plaintiff's failure to respond to the DOE's letters has left this court with a record devoid of the kind of information that, in the ordinary course, would demonstrate predetermination, had it occurred.

Plaintiff's failure to pursue the matter of S.S.'s placement with the DOE also demonstrates that the concern underlying predetermination is absent in this case, supporting this court's independent conclusion that predetermination has not been established. Predetermination is problematic under the IDEA because it deprives parents of the opportunity to participate in the IEP process. See R.L. v. Miami-Dade Cnty. Sch. Bd., 757 F.3d

1173, 1188 (11th Cir. 2014); Fort Osage R-1 Sch. Dist. v. Sims ex rel. B.S., 641 F.3d 996, 1005 (8th Cir. 2011); Deal v. Hamilton Cnty. Bd. of Educ., 392 F.3d 840, 857 (6th Cir. 2004); J.G. ex rel. N.G. v. Kiryas Joel Union Free Sch. Dist., 777 F. Supp. 2d 606, 648 (S.D.N.Y. 2011).  The DOE has presented evidence indicating that, had Plaintiff responded to its communications, Plaintiff would have been able to participate in an IEP meeting examining the range of options available to S.S.

Having concluded that the DOE had not actually predetermined S.S.'s placement, this court turns to Plaintiff's argument that language in the DOE's correspondence kept Plaintiff from contacting the DOE about the possibility that the DOE might provide S.S. with a FAPE at a private school.  The court begins by pointing out that this is not the issue raised in the administrative complaint.  In seeking a due process hearing, Plaintiff contended that the DOE had conditioned an offer of FAPE on S.S.'s attendance at a public school.  This contention clearly focused on the DOE's intent.  In this court, Plaintiff has argued that the DOE led Plaintiff to believe that S.S. had to attend a public school to receive a FAPE.  This is a switch in focus to Plaintiff's state of mind.  The issues are not the same, and Plaintiff may not, by sleight of hand, redraft the issues that she actually identified when she requested an administrative hearing.  Even if Plaintiff could switch issues, Plaintiff is

unpersuasive with respect to the altered issue.

Plaintiff asserts that "a plain reading" of the DOE's letter of March 3, 2011, establishes that the DOE "dissuaded parent from [pursuing] her rights." ECF No. 23, PageID # 240, 242. Specifically, Plaintiff says that the words "If you wish to have your child receive these services in a public school, contact the principal at the phone number listed above" can only be interpreted to mean that the DOE was conditioning its offer of a FAPE on S.S.'s attendance at a public school. Id., PageID # 241. In fact, Plaintiff herself testified that the reason she did not respond to the DOE's letters of either March 3 or April 1, 2011, was because of the press of her family responsibilities. ECF No. 15-1, PageID #s 351-52. Thus, Plaintiff does not establish that Plaintiff was actually dissuaded from responding by the language the DOE used.

Certainly Plaintiff did testify that she understood the letter of March 3, 2011, to be requiring that S.S. be in a public school to receive a FAPE. Even if this court construes her testimony as saying that she had that understanding at her very first reading of the letter on or around March 3, 2011, nowhere does Plaintiff say that this understanding caused her to refrain from contacting any school official.

It is only counsel who argues that the letter dissuaded Plaintiff from calling school officials. Plaintiff herself

testified consistently that she did not do anything because she was busy.  ECF No. 15-1, PageID #s 351-52.  As Plaintiff put it, "At the time that it was sent to me, I got caught up with my busy life.  Like I stated before, I have three children, special needs, and a busy life.  And I -- time passed faster than when I wanted to address this issue."  Id., PageID # 351.

Even after Plaintiff got the second letter, which did not check off FAPE and instead checked off "Private School Participation Project," she did not contact the DOE because she was "really busy with our home life and our kids, and I didn't get to it right away as much as I needed to."  Id., PageID #s 351-52.

Plaintiff nowhere indicated that, but for the language in the DOE's letters, she would have contacted the DOE about obtaining a FAPE, possibly at a private school.  Thus, even when the court examines Plaintiff's altered issue involving purported dissuasion by the DOE, as opposed to the actually articulated issue concerning the DOE's alleged conditioning of an offer of a FAPE on attendance at a public school, Plaintiff does not show that Plaintiff should have prevailed.

**C.  Plaintiff's Objections to the AHO's Qualifications and Consideration of Evidence Are Without Merit.**

Plaintiff alleges that the AHO "did not include all relevant evidence, . . . was biased and did not factually or legally present the issue or evidence in a true or legitimate

manner." Civ. No. 14-cv-71, ECF No. 1, PageID # 4. Plaintiff
also contends that the AHO made determinations that were not
"careful or logical[.]" ECF No. 23, PageID # 244. Plaintiff's
failure to elaborate on these allegations in her papers leaves
this court without explanation as to what evidence was allegedly
excluded, how the AHO was biased, what was false or misleading
about the AHO's presentation of the issue or the evidence, or
what was not careful or logical about the AHO's determinations.

        In her opening brief, Plaintiff also notes that the AHO
was "recently hired" and "was not in attendance" at either the
original evidentiary hearing or the hearing on remand. ECF No.
23, PageID # 243. This case was indeed reassigned to a different
hearing officer following the remand hearing. ECF No. 8-1,
PageID # 58. However, Plaintiff was provided with notice of the
reassignment and was invited to express any concerns or
objections. Although Plaintiff received the notice of
reassignment later than the deadline given to provide objections,
Plaintiff did not request an extension of time and did not lodge
any objection to the reassignment. Id. Plaintiff cannot now
come to this court complaining about the reassignment and the
qualifications of the AHO who decided the issues on remand. If
Plaintiff had concerns about the AHO's experience or absence from
the hearing, Plaintiff should have expressed those concerns
before the AHO ruled. Plaintiff cannot object only after

receiving an adverse result.

Plaintiff also contends that the AHO "rendered no new factual findings in support of his legal analysis." <u>Id.</u>, PageID # 243. Even assuming such a failure would constitute reversible error, which Plaintiff has not established, it is evident from the Decision that additional factual findings were rendered, and that such factual findings support the AHO's legal analysis.

**VI.       CONCLUSION.**

The court affirms the AHO's Decision.


IT IS SO ORDERED.

DATED: Honolulu, Hawaii, November 14, 2014.




/s/ Susan Oki Mollway
Susan Oki Mollway
Chief United States District Judge


<u>Lofisa S., individually and on behalf of her minor child, S.S. v. State of Hawaii, Department of Education, et al.</u>, Civ. No. 12-00213 SOM/BMK, and <u>L.A.S., individually and on behalf of her minor child, S.A.S. v. State of Hawaii, Department of Education, et al.</u>, Civ. No. 14-00071 SOM/BMK; ORDER AFFIRMING ADMINISTRATIVE HEARING OFFICER'S DECISION